UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
ANTHONY ARRIGO, Individually, and                            :
on Behalf of All Others Similarly Situated,                  :     **Civil Action No. 09 Civ. 7518**
                                                             :     **(DPM) (KNF)**
                        Plaintiffs,                          :
                                                             :     **ECF CASE**
            - against -                                      :
                                                             :
BLUE FISH COMMODITIES, INC. and                              :
ANDREW FISHER,                                               :
                                                             :
                        Defendants.                          :
------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS

                                                            PUTNEY TWOMBLY HALL & HIRSON, LLP
                                                            *Attorneys for Defendants Blue Fish*
                                                            *Commodities, Inc. and Andrew Fisher*
                                                            521 Fifth Avenue
                                                            New York, New York 10175
                                                            (212) 682-0020


Of Counsel:
    Stephen J. Macri
    Joseph B. Cartafalsa

# TABLE OF CONTENTS

|  | Page |
|---|---|

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF THE CASE ............................................................................................... 2

ARGUMENT

ARRIGO IS REQUIRED TO ARBITRATE HIS CLAIMS ................................................. 3

      A.    The Federal Arbitration Act Governs Arrigo's Agreement to Arbitrate .............. 3

      B.    Arbitration Should be Compelled ......................................................................... 6

            1.    The Parties Agreed to Arbitrate ................................................................ 6

            2.    Arrigo's Claims Fall Within the Scope of the Arbitration Provision ........... 7

            3.    Arrigo's Claims are Arbitrable .................................................................. 7

            4.    Fisher Is Protected by the Agreement to Arbitrate ..................................... 8

      C.    This Action Should Be Dismissed ........................................................................ 9

            1.    This Action Should Be Dismissed Pending Arbitration ............................. 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

14 Penn Plaza, LLC v. Pyett,
 129 S. Ct. 1456 (2009) ......................................................................................................... 4

Brener v. Becker Paribas, Inc.,
 628 F. Supp. 442 (S.D.N.Y 1985) ....................................................................................... 9

Chanchani v. Salomon/Smith Barney, Inc.,
 2001 U.S. Dist. LEXIS 2036 (S.D.N.Y. Mar. 1, 2001) ................................................... 5, 6

Ciago v. Ameriquest Mortgage Co.,
 295 F. Supp. 2d 324 (S.D.N.Y. 2003) .............................................................................. 4, 8

Circuit City Stores, Inc. v. Adams,
 532 U.S. 105 (2001) .......................................................................................................... 3, 4

Dean Witter Reynolds v. Byrd,
 470 U.S. 213 (1985) .......................................................................................................... 4, 5

Flanagan v. Prudential-Bache Secs., Inc.,
 67 N.Y.2d 500, 504 N.Y.S.2d 82 (1986) ............................................................................. 4

Genesco, Inc. v. T. Kakiuchi & Co.,
 815 F.2d 840 (2d Cir. 1987) ......................................................................................... 3, 5, 9

Gilmer v. Interstate/Johnson Lane Corp.,
 500 U.S. 20 (1991) .......................................................................................................... 3, 4, 7

Gonzalez v. Toscorp, Inc.,
 1999 U.S. Dist. LEXIS 12109 (S.D.N.Y. Aug. 5, 1999) ................................................. 5, 6

Metzler v. Harris Corp.,
 2001 U.S. Dist. LEXIS 1903 (S.D.N.Y. Feb. 26, 2001) ..................................................... 8

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
 460 U.S. 1 (1983) ............................................................................................................. 3, 7

NPS Communications, Inc. v. Continental Group, Inc.,
 760 F.2d 463 (2d Cir. 1985) ................................................................................................ 9

Roby v. Corporation of Lloyd's,
    996 F.2d 1353 (2d Cir.) ..........................................................................................8

Rubin v. Sona Int'l Corp.,
    457 F. Supp. 2d 191 (S.D.N.Y. 2006)...................................................................10

S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.,
    745 F.2d 190 (2d Cir. 1984)....................................................................................9

Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    85 N.Y.2d 173, 623 N.Y.S.2d 790 (1995) .............................................................4

Scher v. Bear Stearns & Co.,
    723 F. Supp. 211 (S.D.N.Y. 1989) .........................................................................9

Shearson/American Express, Inc. v. McMahon,
    482 U.S. 220 (1987)............................................................................................5, 9

Singer v. Jefferies & Co.,
    78 N.Y.2d 76, 571 N.Y.S.2d 680 (1993) ............................................................3, 7

Sinnett v. Friendly Ice Cream Corp.,
    319 F. Supp. 2d 439 (S.D.N.Y. 2004) ....................................................................8

Spencer-Franklin v. Citigroup/Citibank N.A.,
    2007 U.S. Dist. LEXIS 11625 (S.D.N.Y. Feb. 21, 2007) ......................................9

Steele v. L.F. Rothschild & Co.,
    701 F. Supp. 407 (S.D.N.Y. 1988) .........................................................................8

Tarulli v. Circuit City Stores, Inc.,
    333 F. Supp. 2d 151 (S.D.N.Y. 2004) ....................................................................7

Thomas James Assocs. v. Jameson,
    102 F.3d 60 (2d Cir. 1996)......................................................................................7

Vera v. Sakes & Co.,
    335 F.3d 109 (2d Cir. 2003)....................................................................................5

Vittengl v. Wurld Media, Inc.,
    2007 U.S. Dist. LEXIS 25492 (N.D.N.Y. Apr. 5, 2007) .......................................9

Williams v. Parkell Prods.,
    91 Fed. Appx. 707 (2d Cir. 2003) ...........................................................................9

**STATUTES**

9 U.S.C. § 3 .................................................................................................................5, 9

9 U.S.C. § 4 ....................................................................................................................5

Fair Labor and Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") ........................1, 3, 7, 8

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ............................................................1, 3

N.Y. Lab. Law § 190 *et seq.* ....................................................................................1, 3

**OTHER AUTHORITIES**

Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure .......................................1

## **PRELIMINARY STATEMENT**

On August 27, 2009, plaintiff Anthony Arrigo commenced this action, which he purports to bring as a class action, arising from his and other allegedly similarly situated persons' employment with defendant Blue Fish Commodities, Inc. ("BFC"). In the Complaint, Arrigo alleges that during his employment, BFC and defendant Andrew Fisher, in his capacity as Chief Executive Officer of BFC, failed to pay Arrigo and other current and former account executives ("Account Executives") overtime compensation for work allegedly performed in excess of forty (40) hours per week, in violation of the Fair Labor and Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Wage and Hour Law, N.Y. Lab. Law § 190 *et seq.*, the New York Labor Articles 6 and 19 and the New York Codes, Rules and Regulations § 138-2.1 *et seq.* ("New York Labor Articles"). Defendants now move, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, for an Order dismissing this action and compelling Arrigo to arbitrate his claims.

Arrigo and all other Account Executives employed by BFC expressly agreed to arbitrate any employment-related claims they may have against BFC. (Fisher Aff. ¶¶ 4-5).[1] Upon commencement of employment with BFC, all Account Executives, including Arrigo, signed an employment agreement which contains an express provision that any and all actions pertaining to the Account Executive's employment or related to the employment agreement shall be settled by arbitration.

In accordance with the Federal Arbitration Act and pursuant to the arbitration provision contained in the employment agreement, this Court should compel Arrigo to arbitrate the claims that are the subject of this lawsuit.

---

[1] References to the paragraphs of the Affidavit of Andrew Fisher are designated as "(Fisher Aff. ¶__)."

## STATEMENT OF THE CASE

All BFC Account Executives are licensed brokers registered with the National Futures Association ("NFA") whose primary duty is to sell commodities futures. Upon commencement of employment with BFC, Arrigo entered into an employment agreement ("Agreement") with BFC which includes an arbitration provision relegating all employment-related claims to arbitration. (Fisher Aff. Ex. 1).[2] The Agreement specifically provides that "[any] action pertaining to [Account Executive's] employment or related to this Agreement shall be settled by arbitration in accordance with the rules of the National Futures Association." (Fisher Aff. Ex. 1, p. 11) (emphasis added). The Agreement vests "exclusive authority" in the arbitrator and provides specific procedural and substantive protections for Arrigo. (Id.) Specifically, the Agreement states that "[the] Arbitrator is authorized to resolve all federal and state statutory claims." (Id.) (emphasis added). The Agreement further provides that "[t]he Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted." (Id.) Lastly, the Agreement memorializes Arrigo's understanding that "by entering this Agreement to arbitrate, [the parties] are agreeing to substitute one legitimate dispute resolution forum (arbitration) for another (judicial), and thereby are waiving their right to have their disputes ... resolved in court." (Id.)

In the Complaint, Arrigo alleges that he and other Account Executives routinely worked in excess of 40 hours per week without receiving overtime compensation. (Complaint ¶20).[3] According to Arrigo, BFC routinely failed to pay him and other Account Executives overtime

---

[2] References to the exhibits attached to the Affidavit of Andrew Fisher are designated as "(Fisher Aff. Ex. __)."
[3] References to the paragraphs of the Complaint, a copy of which is attached hereto as Exhibit A, are designated as (Complaint ¶__).

2

compensation during their employment by improperly designating the position of "account executive" as exempt from overtime requirements. (Complaint ¶28). In addition, Arrigo seeks to hold Fisher personally responsible by alleging that, in his role as Chief Executive Officer of BFC, Fisher "determined employee salaries" and "acted on behalf of and in the interest of [BFC] in devising, directing, implementing, and supervising the wage and hour practices and policies relating to [BFC] account executives." (Complaint ¶9). Based on the foregoing allegations, Arrigo claims that Defendants violated the FLSA, the New York Wage and Hour Law, and the New York Labor Articles. (Complaint ¶¶ 1, 27, 41, 43, 57).

## ARGUMENT

## ARRIGO IS REQUIRED TO ARBITRATE HIS CLAIMS

### A.   The Federal Arbitration Act Governs Arrigo's Agreement to Arbitrate.

Arrigo's employment agreement with BFC contains an express provision to arbitrate claims that relate to the Agreement or arise out of the employment relationship. (Fisher Aff. ¶4). This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25 (1991). The FAA is a "Congressional declaration of a liberal federal policy favoring arbitration agreements," Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (internal citations omitted), and "establishes an 'emphatic' national policy favoring arbitration which is binding on all courts, State and Federal." Singer v. Jefferies & Co., 78 N.Y.2d 76, 81, 571 N.Y.S.2d 680, 682 (1993) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983)). Indeed, the FAA was adopted to ensure enforcement

3

of private agreements to arbitrate and "compels judicial enforcement of a wide range of written arbitration agreements." Circuit City Stores, 532 U.S. at 112; Dean Witter Reynolds v. Byrd, 470 U.S. 213, 219, 221 (1985). This includes agreements to arbitrate disputes arising out of employment in the securities market. Flanagan v. Prudential-Bache Secs., Inc., 67 N.Y.2d 500, 504 N.Y.S.2d 82 (1986); Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 85 N.Y.2d 173, 623 N.Y.S.2d 790 (1995).

Where an arbitration agreement requires the arbitration of disputes involving a federal statute, the parties to a valid arbitration agreement are compelled to arbitrate "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum...." Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 328 (S.D.N.Y. 2003) (quoting Gilmer, 500 U.S. at 28) (internal citation omitted). See 14 Penn Plaza, LLC v. Pyett, 129 S. Ct. 1456, 1465 (2009) (finding that "having made a bargain to arbitrate, a party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue"). Here, the Agreement would allow Arrigo (and other Account Executives) to vindicate his statutory rights. As explained above, the Agreement explicitly authorizes the arbitrator to "resolve all federal and state statutory claims." (Fisher Aff. Ex. 1, p. 11). The Agreement further provides that the Arbitrator "shall apply the substantive law (and the law of remedies, as applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted." (Id.) The NFA's arbitration rules (attached as Fisher Aff. Ex. 2) also provide additional procedural and substantive protections for Arrigo, including, but not limited to, allowing the parties to object to arbitrators (Section 3(c)); requiring that the parties or their representatives disclose "any circumstances that might prevent the arbitrator from acting impartially," including any bias or financial interest in the result of the

4

arbitration or any past or present relationship with the arbitrator (Sections 3(b) and (c)); requiring the arbitrator to execute an oath (Section 3(d)); providing for the replacement of the arbitrator if the arbitrator becomes ineligible or unable to serve (Section 3(e)); prohibiting *ex parte* communications (Section 3(f)); requiring the respondent to serve an Answer to the arbitration claim (Section 5(e)); a right to counsel (Section 6); a procedure for the exchange of documents and information that is comparable to discovery (Sections 7(a) and (b)); the pre-hearing exchange of a document that is comparable to a pre-trial order (Section 7(c)); and mechanics for the taking of depositions (Section 7(i)). (Fisher Aff. Ex. 2). In sum, the arbitration procedure contemplated by the Agreement fully allows Arrigo to effectively vindicate his instant causes of action in the arbitral forum.

Courts assess three primary factors to determine whether arbitration should be compelled under the FAA: (1) whether the parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of the agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable. Genesco, Inc., 815 F.2d at 844. See also Chanchani v. Salomon/Smith Barney, Inc., 2001 U.S. Dist. LEXIS 2036, *5-6 (S.D.N.Y. Mar. 1, 2001); Gonzalez v. Toscorp, Inc., 1999 U.S. Dist. LEXIS 12109, *4 (S.D.N.Y. Aug. 5, 1999).[4] When a party to a valid arbitration agreement asserts arbitrable claims in a judicial forum that fall within the scope of the agreement, as Arrigo has done here, the FAA requires the Court to compel arbitration. 9 U.S.C. §§ 3 and 4; Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987); Dean Witter Reynolds, 470 U.S. at 217; Vera v. Sakes & Co., 335 F.3d 109, 116 (2d Cir. 2003). The Court should compel arbitration because, as shown below, Arrigo is a

---

[4] Copies of the Chanchani and Gonzalez cases are attached hereto as Exhibits B and C, respectively.

party to a valid arbitration agreement, his claims fall within the scope of the agreement, and his claims are arbitrable.

### B. Arbitration Should Be Compelled.

#### 1. The Parties Agreed to Arbitrate.

Upon hiring, Arrigo, like other Account Executives, signed an employment agreement that expressly sets forth the terms of the employment relationship between the Account Executive and BFC. The Agreement contains a provision that expressly requires that all claims "pertaining to [Account Executive's] employment or related to [the employment agreement] shall be settled by arbitration in accordance with the rules of the National Futures Association." (Fisher Aff. Ex. 1, p. 11). The Agreement further provides that the arbitrator has "exclusive authority" to decide all disputes relating to the Agreement or to the employment relationship, including "all federal and statutory claims." (Id.) Moreover, the provision memorializes the parties' understanding that "by entering this Agreement to arbitrate, they are agreeing to substitute one legitimate dispute resolution forum (arbitration) for another (judicial), and are thereby waiving their right to have their disputes ... resolved in court." (Id.) Thus, Arrigo and other Account Executives accepted employment with BFC on the express condition that they agreed to the terms of, and signed, the employment agreement.

In this case, Arrigo and other Account Executives not only accepted and continued their employment with full knowledge of the arbitration provision, they agreed to its terms, in writing, at the outset of their employment. See Chanchani, 2001 U.S. Dist. LEXIS at *8-9; Gonzalez, U.S. Dist. LEXIS at *6 (finding that even in the absence of a written agreement to arbitrate, and employee who receives an arbitration policy and continues his employment is bound by its terms). In addition, Account Executives' registration with the National Futures Association,

6

which provides an arbitral forum for the resolution of disputes, evinces a choice to submit all claims between NFA members (like BFC) and associates (like the Account Executives) to arbitration. (Fisher Ex. 1, pp. 1, 2). Under these circumstances, arbitration is clearly warranted. See Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where the plaintiff "voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration").

### 2. Arrigo's Claims Fall Within The Scope Of The Employment Agreement's Arbitration Provision.

Arrigo's FLSA claims fall squarely within the scope of the arbitration provision contained in the employment agreement. The provision expressly applies to "any other common law or equitable basis of action pertaining to [Account Executive's] employment or related to this Agreement." (Fisher Aff. Ex. 1, p. 11). Furthermore, the provision grants the arbitrator the authority "to resolve all federal and state statutory claims." (Id.)

Even if any question existed as to the "scope of arbitrable issues" here, such question would have to be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. Arbitration *must* be compelled "unless it may be said *with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Thomas James Assocs. v. Jameson, 102 F.3d 60, 65 (2d Cir. 1996) (citations omitted, emphasis added); Singer, 78 N.Y.2d at 82, 571 N.Y.S.2d at 683. Based on the foregoing, Arrigo's claims fall within the scope of the agreement to arbitrate and arbitration should be compelled.

### 3. Arrigo's Claims Are Arbitrable.

All of Arrigo's FLSA claims are arbitrable. See Gilmer v. Interstate/Johnson Lane Corp.,

7

500 U.S. 20 (1991) (recognizing that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue"); Ciago, 295 F. Supp. 2d at 332 (finding that "Congress has not evinced an intention to preclude arbitration of FLSA claims"); Steele v. L.F. Rothschild & Co., 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (compelling arbitration of FLSA claims); Sinnett v. Friendly Ice Cream Corp., 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) (finding that "[plaintiff] did not waive any of his rights under the FLSA by entering into an arbitration agreement; rather he has agreed to have those rights adjudicated in an alternative forum than this Court" and therefore "claims brought under the FLSA may be addressed pursuant to an arbitration provision").

Arrigo's state law claims are similarly arbitrable. Nothing in the New York Labor Law indicates that the state legislature intended to preclude compulsory arbitration of claims under those provisions. See Metzler v. Harris Corp., 2001 U.S. Dist. LEXIS 1903 (S.D.N.Y. Feb. 26, 2001) (compelling arbitration of claims asserted under New York Labor Law).[5]

### 4. Fisher Is Protected By The Agreement To Arbitrate.

Arrigo's claims against Fisher must be arbitrated. The Second Circuit has routinely held that "employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1360 (2d Cir.), cert. denied, 510 U.S. 945, 126 L. Ed. 2d 333, 114 S. Ct. 385 (1993) (holding that individual chairs of the governing bodies of defendant's insurance syndicates were entitled to rely on arbitration provisions incorporated into their employers' agreements, notwithstanding that the

---

[5] A copy of the Metzler case is attached hereto as Exhibit D.

8

chairs were not signatories to any agreement with the investors). See also Scher v. Bear Stearns & Co., 723 F. Supp. 211, 216-17 (S.D.N.Y. 1989) (finding that acts by employees of one of the parties to a an agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the agreement); Brener v. Becker Paribas, Inc., 628 F. Supp. 442, 451 (S.D.N.Y 1985) (same). Here, Arrigo's claims against Fisher are based on Fisher's status as an agent of BFC. (Complaint ¶9). Therefore, all of Arrigo's claims against BFC and Fisher should be arbitrated.

### C. This Action Should Be Dismissed.

#### 1. This Action Should Be Dismissed Pending Arbitration.

Once claims asserted in a pending court action are determined to be subject to an arbitration agreement, the FAA mandates that the action be stayed pending completion of arbitral proceedings. 9 U.S.C. § 3. See also Shearson/American Express, 482 U.S. at 226; Genesco, Inc., 815 F.2d at 856 ("Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit..."); NPS Communications, Inc. v. Continental Group, Inc., 760 F.2d 463, 465 (2d Cir. 1985); S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 196-97 (2d Cir. 1984). However, where *all* of the issues raised in plaintiff's complaint must be submitted to arbitration, as here, several courts have dismissed those cases entirely. See, e.g., Williams v. Parkell Prods., 91 Fed. Appx. 707, 709 (2d Cir. 2003) (affirming dismissal of complaint where employee had entered into an agreement to arbitrate disputes); Vittengl v. Wurld Media, Inc., 2007 U.S. Dist. LEXIS 25492, *4 (N.D.N.Y. Apr. 5, 2007) (finding that "because there are no issues remaining in this dispute that might properly be decided by the district court, it is appropriate to dismiss the action whether than to stay it"); Spencer-Franklin v.

Citigroup/Citibank N.A., 2007 U.S. Dist. LEXIS 11625, *11 (S.D.N.Y. Feb. 21, 2007) (recognizing that "[a]ll courts of which we are aware have followed the rule" that a court may dismiss a case in which all claims must be arbitrated); Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.").[6]

Based on the foregoing, once this Court compels arbitration of Arrigo's claims, this action should be dismissed pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to compel arbitration and this action should be dismissed or stayed.

Dated: New York, New York
       October 15, 2009

_/s/_
Joseph B. Cartafalsa (JC 9352)
PUTNEY, TWOMBLY, HALL & HIRSON LLP
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

*Attorneys for Defendants Blue Fish
Commodities, Inc. and Andrew Fisher*

---

[6] Copies of the Vittengl and Spencer-Franklin cases are attached hereto as Exhibits E and F, respectively.