UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
ANTHONY ARRIGO, Individually, and                           :
on Behalf of All Others Similarly Situated,                 :    **Civil Action No. 09 Civ. 7518**
                                                            :    **(VM) (KNF)**
                              Plaintiffs,                   :
                                                            :    **ECF CASE**
           - against -                                      :
                                                            :
BLUE FISH COMMODITIES, INC. and                             :
ANDREW FISHER,                                              :
                                                            :
                              Defendants.                   :
------------------------------------------------------------x


# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL
# ARBITRATION AND DISMISS OR STAY PROCEEDINGS

PUTNEY TWOMBLY HALL & HIRSON, LLP
*Attorneys for Defendants Blue Fish*
*Commodities, Inc. and Andrew Fisher*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

Of Counsel:
   Stephen J. Macri
   Joseph B. Cartafalsa

# TABLE OF CONTENTS

|  | Page |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION AND SUMMARY ARGUMENT | 1 |
| ARGUMENT | |
| PLAINTIFFS' CLAIMS MUST BE ARBITRATED | 2 |
|     A. Public Policy Favors Arbitration | 2 |
|     B. The NFA Member Arbitration Rules Allow For Arbitration In This Case | 3 |
|     C. The Arbitrator, Not the Court, Should Decide the Issue of Arbitrability | 5 |
|     D. The Arbitration Agreement is Clear and Unambiguous | 6 |
|     E. The Arbitrator is Authorized to Resolve All of Plaintiffs' Claims | 7 |
| CONCLUSION | 9 |

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                         Page(s)

Aerotel, Ltd. v. RSL Communications, Ltd.,
    99 F. Supp. 2d 368 (S.D.N.Y. 2000) ........................................................................... 3, 7

AT&T Technologies, Inc. v. Communications Workers,
    475 U.S. 643 (1986) ............................................................................................................ 5

Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,
    189 F.3d 289 (2d Cir. 1999) ............................................................................................... 2

Collins & Aikman Products Co. v. Building Systems, Inc.,
    58 F.3d 16 (2d Cir. 1995) ............................................................................................... 2, 7

Cooper v. Federal Reserve Bank of Richmond,
    467 U.S. 867 (1984) ............................................................................................................ 3

David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,
    923 F.2d 245 (2d Cir. 1991) ............................................................................................... 2

Genesco, Inc. v. T. Kakiuchi & Co.,
    815 F.2d 840 (2d Cir. 1987) ........................................................................................... 7, 8

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991) .............................................................................................................. 6

Green Tree Financial Corp. v. Bazzle,
    539 U.S. 444 (2003) ............................................................................................................ 5

McMahan Securities Co. v. Forum Capital Markets L.P.,
    35 F.3d 82 (2d Cir. 1994) ................................................................................................... 2

Mildworm v. Ashcroft,
    200 F. Supp. 2d 171 (E.D.N.Y. 2002) ............................................................................... 6

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
    460 U.S. 1 (1983) ................................................................................................................ 2

Oldroyd v. Elmira Savings Bank, FSB,
    134 F.3d 72 (2d Cir. 1998) ............................................................................................. 2, 7

Thomas James Associates, Inc. v. Jameson,
    102 F.3d 60 (2d Cir. 1996) ................................................................................................. 3

U.S. Parole Commission v. Geraghty,
   445 U.S. 388 (1980) ............................................................................................3


**STATE CASES**

Rentways, Inc. v. O'Neill Milk & Cream Co.,
   308 N.Y. 342, 126 N.E.2d 271 (1955) ..................................................................7

South Road Associates, LLC v. International Business Machines Corp.,
   4 N.Y.3d 272, 793 N.Y.S.2d 835 (2005) ..............................................................7


**STATUTES**

29 U.S.C. §§201-19 ............................................................................................7

29 U.S.C. § 207(i) ..............................................................................................8

New York Labor Articles 6 and 19 ......................................................................7


**OTHER**

12 NYCRR §§ 142-2.1 *et seq.* ...........................................................................7

22 N.Y. Jur.2d, Contracts § 248 .........................................................................7

29 C.F.R. §779.410 *et seq.* ................................................................................8

Fed. R. Civ. P. 23(b)(3) ......................................................................................4

## INTRODUCTION AND SUMMARY ARGUMENT

Defendants submit this reply brief in further support of Defendants' Motion to Compel Arbitration and Dismiss or Stay the Proceedings.

Plaintiff Arrigo and the other commodities brokers are parties to individual employment agreements with Blue Fish Commodities, Inc. ("BFC") which contain an express agreement to arbitrate all claims relating to the employment relationship. The arbitration agreement expressly provides that "the Arbitrator is authorized to resolve all federal and state statutory claims." (Fisher Oct. 15 Aff., Ex. 1, p. 11).[1] The arbitration agreement further provides that "[t]he Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Rules of evidence of the state where the claim arose shall apply to the arbitration." (Id.). The arbitration clause also incorporates by reference the National Futures Association ("NFA") Member Arbitration Rules, which allow for the consolidation of claims involving common questions of fact or arising from the same act or transactions. (Id.; Fisher Oct. 15 Aff., Ex. 2, §5(m)).

In short, the arbitration agreement provides that the Arbitrator is authorized to resolve the federal and state statutory claims asserted by Plaintiffs, and that the relevant "substantive law," the "law of remedies" and applicable "[r]ules of evidence" shall apply. (Fisher Oct. 15 Aff., Ex. 1, p. 11). In addition, the NFA Member Arbitration Rules allow Plaintiff Arrigo and the seven proposed class members to consolidate their claims in one action (providing comparable procedural advantages of a class action). As the arbitral forum agreed upon by the parties

---

[1] References to the exhibits attached to Andrew Fisher's October 15, 2009 Affidavit are designated as (Fisher Oct. 15 Aff., Ex. __).

provides adequate substantive and procedural protections, Arrigo and other brokers who seek to be part of the proposed class should be compelled to arbitrate.

The arbitration agreement also expressly provides that "the Arbitrator, and not any federal, state, or local, court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to, any claim that all or any part of the Agreement to arbitrate is void or voidable." (Id.). Thus, even if there exists a question of arbitrability, such question must be decided by the arbitrator, not the Court.

## ARGUMENT

## PLAINTIFFS' CLAIMS MUST BE ARBITRATED

### A. Public Policy Favors Arbitration.

In opposing the enforcement of their express arbitration agreement, Plaintiffs ignore the well-established federal public policy that strongly favors arbitration. See, e.g., Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999) ("Through the FAA, Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution." (citation and quotation omitted)); Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998); David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir. 1991). This policy "requires [New York courts] to construe arbitration clauses as *broadly* as possible," Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 19 (2d Cir. 1995) (emphasis added; citation and quotation omitted), and to resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983); McMahan Securities Co. v.

Forum Capital Markets L.P., 35 F.3d 82, 86 (2d Cir. 1994). Moreover, a broadly-worded arbitration clause, such as the one here, "creates a strong presumption in favor of arbitrability that applies with even greater force." Aerotel, Ltd. v. RSL Communications, Ltd., 99 F. Supp. 2d 368 (S.D.N.Y. 2000).

Plaintiffs have supplied no evidence to rebut the presumption of arbitrability and cannot show "with positive assurance" that a claim for overtime is not within the scope of the arbitration clause. Thomas James Associates, Inc. v. Jameson, 102 F.3d 60, 65 (2d Cir. 1996) (citations omitted). Rather, Plaintiffs provide only conclusory allegations that the agreement is a "grammatical abomination" that cannot be construed as an agreement to arbitrate. Plaintiffs provide no basis for disregarding the explicit language of the clause that memorializes the parties' understanding that "*by entering this Agreement to arbitrate, they are ... waiving their right to have their disputes ... resolved in court.*" (Fisher Oct. 15 Aff., Ex. 1, p. 11, emphasis added).

### B. The NFA Member Arbitration Rules Allow For Arbitration In This Case.

Plaintiffs contend that their claims are not arbitrable because Arrigo seeks to maintain a class action.[2] To support this contention, Plaintiffs cite to an NFA publication from November 2003, which states that the "NFA does not accept class actions because they are too unwieldy to administer." (Opp. Br., Ex. A, p. 5).[3] Plaintiffs' arguments must fail.

---

[2] Plaintiffs argue as if merely seeking a class action creates a substantive right. This is not the case. Rule 23 and the class-action mechanism it creates are entirely procedural in nature. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 880-81 (1984) ("[t]he class-action device was intended to establish a *procedure* for the adjudication of common questions of law or fact"); U.S. Parole Commission v. Geraghty, 445 U.S. 388, 402 (1980) (describing assertion of "the right to represent a class" as "a procedural claim"). As such, Rule 23 does not create a substantive right to maintain a class action.

[3] References to the exhibits attached to Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings are designed as (Opp. Br., Ex. __).

First, for a class action to be maintained, the proposed class must be "so numerous that joinder of all members ... is impracticable." Fed. R. Civ. P. 23(b)(3). This is not the case here. Arrigo purportedly seeks to maintain a class action that represents "hundreds of account executives whose rights are potentially in this lawsuit." (Opp. Br. p. 5). To date, however, only seven brokers have joined Arrigo in his claims for overtime. Furthermore, BFC's entire workforce is not large enough to give rise to a class of "hundreds" of brokers. In the past six years, BFC has employed only approximately forty-eight (48) brokers. (Fisher Nov. 5 Aff. ¶3).[4] At any given time, BFC typically employs approximately twelve (12) or fewer brokers. (Fisher Nov. 5 Aff. ¶4). Therefore, the number of proposed class members could not possibly reach the threshold required to satisfy the numerosity requirement. In short, Plaintiffs ask this Court to not stay or dismiss the proceeding on the purely hypothetical theory that Plaintiffs may be certified as a class. However, Plaintiffs wholly ignore the fact that BFC employed so few brokers that the numerosity requirement of Rule 23 cannot be satisfied.

Second, Plaintiffs' contention, that "[s]ince the NFA does not permit class actions, Defendants seek to deprive [Plaintiffs] from ... having their very similar overtime claims decided" together, is wholly without merit. (Opp. Br. p. 6). NFA Member Association Rule 5(m) expressly provides for the **consolidation** of claims that involve common questions of fact or arise from the same act or transaction. (Fisher Oct. 15 Aff., Ex. 2, §5(m)(1)). The Rule also allows a party to "join multiple claims in a single Arbitration Claim...." (Fisher Oct. 15 Aff., Ex. 2, §5(m)(2)). Here, the consolidation of Plaintiffs' claims, as permitted by Member Arbitration Rule 5(m), is both feasible and practicable. By allowing for the consolidation of

---

[4] References to the paragraphs of Andrew Fisher's November 5, 2009 Affidavit are designated as (Fisher Nov. 5 Aff. ¶__).

4

claims, the NFA Member Arbitration Rules provide the very same procedural mechanism that Plaintiffs now attempt to secure through a class action. Enforcement of the arbitration agreement will **not** "deprive Arrigo and other account executives from the benefits of having their very similar overtime claims" decided together, as Plaintiffs allege. (Opp. Br. p. 6).[5] Plaintiffs should therefore be compelled to arbitrate their claims as required by the arbitration agreement.

### C. The Arbitrator, and Not the Court, Should Decide the Issue of Arbitrability.

Assuming *arguendo* that a question of arbitrability exists in this case, the arbitrator, not the Court, should decide that question. See Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 451 (2003). Only in "limited circumstances will courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clear and unmistakable' evidence to the contrary)." Id. (citing AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986)). The litigation of arbitrability undertaken in a judicial forum by Plaintiffs, if indulged, would tend to seriously undermine the underlying scheme of the FAA and the public policy favoring arbitration. Given these considerations, along with the arbitration agreement's explicit language that "the Arbitrator, and not any federal, state, or local, court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to, any claim that all or any part of the Agreement to arbitrate is void or voidable," the issue of arbitrability in this case should be for the arbitrator, not the Court, to decide. Id. at 452. Allowing the arbitrator to decide the issue would in no way prejudice Plaintiffs.

---

[5] References to pages in Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings are designated as (Opp. Br. p. ___).

### D. The Arbitration Agreement Is Clear and Unambiguous.

The arbitration clause contained in Arrigo's employment agreement[6] makes arbitrable "*any and all claims*, demands, actions, ... causes of action or damages resulting from ... *any* other common law or equitable basis of action pertaining to the Associate Person's employment or related to this Agreement..."[7] (Fisher Oct. 15 Aff., Ex. 1, p. 11, emphasis added). The <u>very next sentence</u> of the agreement (and not, as Plaintiffs claim, "subsequent language, taken wholly out of context") expressly authorizes the Arbitrator to "*resolve all federal and state statutory claims.*" (Fisher Oct. 15 Aff., Ex. 1, p. 11, emphasis added). Contrary to Plaintiffs' assertions, the second sentence clarifies, rather than confuses, the effect of the agreement to arbitrate on the brokers' federal and state rights.[8] See, e.g., Mildworm v. Ashcroft, 200 F. Supp. 2d 171, 177 (E.D.N.Y. 2002). Reasonably construed, this sentence confirms that the broker retains his or her federal and state statutory rights, albeit that those rights must be pursued in arbitration, not in federal or state court. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (recognizing that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum") (quotation omitted).

The few grammatical errors in the first sentence of the arbitration clause do not significantly impact the broad nature of the agreement to arbitrate, nor do they obfuscate its clear meaning. The clause must be read "as a whole to ensure that excessive emphasis is not placed

---

[6] The arbitration agreements of the other seven brokers that seek to join the class provide similarly. (Fisher Nov. 5 Aff. ¶2).

[7] Note that contrary to Plaintiffs' baseless accusation, the word "any" does in fact belong in the sentence, and is not "fictitious language." (Opp. Br. p. 3).

[8] Plaintiffs' argument that if Arrigo or any other broker were to prevail in a claim brought against BFC, he would have to indemnify BFC for their damages (Opp. Br. p. 2) is nonsensical and wholly unsupported by the agreement.

upon particular words or phrases." 22 N.Y. Jur.2d, Contracts § 248 at 290. See also, South Road Associates LLC v. International Business Machines Corp., 4 N.Y.3d 272, 793 N.Y.S.2d 835 (2005); Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342, 126 N.E.2d 271 (1955). Read as a whole, the arbitration clause clearly and unambiguously sets forth the parties' understanding that they "are agreeing to substitute one legitimate dispute resolution forum (arbitration) for another (judicial)." (Fisher Oct. 15 Aff., Ex. 1, p. 11); Aerotel, Ltd., 99 F. Supp. 2d at 373. Such broad and unambiguous language justifies a presumption of arbitrability that the Plaintiffs cannot overcome. Collins & Aikman Prod. Co., 58 F.3d at 20.

### E. The Arbitrator Is Authorized To Resolve All of Plaintiffs' Claims.

Even without a presumption of arbitrability, the contractual language of the arbitration agreement is sufficiently broad to encompass Plaintiffs' claims. Plaintiffs contend that their claims for overtime under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), New York Labor Articles 6 and 19, and 12 NYCRR §§ 142-2.1 *et seq.* ("New York Labor Laws") do not fall within the scope of the agreement simply because they are statutory, rather than common law or equitable claims. (Opp. Br. p. 4). Plaintiffs argue that the arbitration agreement applies only to common law claims. (Id.). This contention is untenable. The interpretation of a contract, and of Plaintiffs' agreement to arbitrate, is of course a matter of common law. However, the arbitration agreement then specifically states that "[t]he Arbitrator is authorized to resolve all federal and statutory claims." (Fisher Oct. 15 Aff., Ex. 1, p. 11).

In determining whether a particular claim falls within the scope of the parties' arbitration agreement, courts focus on the factual allegations of the complaint rather than the legal causes of action asserted. Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72 (2d Cir. 1998); Genesco,

Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). "If the allegations underlying the claims touch matters covered by the parties' [] agreements, then those claims *must* be arbitrated, whatever the legal labels attached to them." Id. (quotation omitted) (emphasis added). Plaintiffs wholly ignore the simple and express language of the arbitration agreement, that "[t]he Arbitrator is authorized to resolve all federal and state statutory claims." (Fisher Oct. 15 Aff., Ex. 1, p. 11). Plaintiffs' argument that the agreement to arbitrate does not cover the FLSA and state labor law claims is thus baseless.

In addition, Plaintiffs' claims relate directly to the brokers' status as commissioned employees and, consequently, depend on the terms of their individual employment agreements. Specifically, each broker's employment agreement provides that "BFC shall pay [the broker] … in accordance with a commission schedule." (Fisher Oct. 15 Aff., Ex. 1, p. 3). The employment agreement does not contemplate any other payment of regular wages. Therefore, Arrigo and other brokers' status as "commissioned salesmen" (who are *exempt* from the overtime provisions of the FLSA, 29 U.S.C. § 207(i); 29 C.F.R. § 779.410 *et seq.*), is a central issue in this case that bears directly on the validity – or lack thereof – of Plaintiffs' claims for overtime. Because the arbitrator is authorized to resolve federal and state statutory claims, and because the validity of Plaintiffs' claims cannot be determined without reference to the employment agreement, these claims must be arbitrated in accordance with the parties' express agreement to do so.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to compel arbitration and this action should be dismissed or stayed.

Dated: New York, New York
       November 6, 2009

                                                /s/
                                    Joseph B. Cartafalsa (JC 9352)
                                    PUTNEY, TWOMBLY, HALL & HIRSON LLP
                                    521 Fifth Avenue
                                    New York, New York 10175
                                    (212) 682-0020

                                    *Attorneys for Defendants Blue Fish*
                                    *Commodities, Inc. and Andrew Fisher*