```
                                        ┌──────────────────────────────┐
                                        │ USDS SDNY                    │
                                        │ DOCUMENT                     │
UNITED STATES DISTRICT COURT            │ ELECTRONICALLY FILED         │
SOUTHERN DISTRICT OF NEW YORK           │ DOC #: _____             │
-----------------------------------X    │ DATE FILED: 2/4/10           │
ANTHONY ARRIGO, INDIVIDUALLY,      :    └──────────────────────────────┘
AND ON BEHALF OF ALL OTHERS        :
SIMILARLY SITUATED,                :
                                   :        09 Civ. 7518(VM)
                        Plaintiff, :
                                   :     DECISION AND ORDER
        - against -                :
                                   :
BLUE FISH COMMODITIES, INC.        :
AND ANDREW FISHER                  :
                                   :
                       Defendants. :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Anthony Arrigo ("Arrigo") brought this action on behalf of himself and all others similarly situated against defendants Blue Fish Commodities, Inc. ("Blue Fish") and Andrew Fisher ("Fisher") (collectively, "Defendants"). Arrigo's complaint (the "Complaint") asserts two counts relating to Defendants' alleged failure to pay overtime compensation: (1) violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., and (2) violation of the New York Labor Articles 69 and 19 and New York City Rules and Regulations § 142-2.1 et seq. Defendants now move for an order compelling Arrigo to arbitrate his claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA").

For the reasons discussed below, Defendants' motion to compel arbitration is GRANTED and the Court dismisses the Complaint.[1]

## I. BACKGROUND[2]

Blue Fish operates a commodity-brokerage business. Arrigo was formerly employed by Blue Fish as an account executive. Arrigo alleges that he and other Blue Fish account executives routinely worked in excess of forty hours per week without receiving overtime compensation, in violation of federal, state, and municipal law.

In addition to asserting his claims against Blue Fish, Arrigo seeks to hold Fisher, Blue Fish's chief executive officer when Arrigo worked for Blue Fish, responsible for the alleged compensation-related violations.  The Complaint alleges that Fisher, in his role as Blue Fish's CEO, "determined employee salaries" and "acted on behalf of and in the interest of [Blue Fish] in devising, directing,

---

[1] The Defendants also move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court need not address these motions given its ruling to compel arbitration and dismiss the Complaint.

[2] The facts below are taken from the Complaint and the documents attached to it or incorporated by reference.  The Court accepts these facts as true for the purposes of ruling on a motion to dismiss.  See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008).  Except where specifically referenced, no further citation to these sources will be made.

implementing, and supervising the wage and hour practices and policies relating to [its] account executives." (Compl. ¶ 9.)

When Arrigo began working with Blue Fish, he entered into an employment agreement with the company, dated July 14, 2008 (the "Employment Agreement"), which included an arbitration provision (the "Arbitration Provision") referring all employment-related claims to arbitration.    The Arbitration Provision reads:

> [A]ny other common law or equitable basis of action pertaining to [the employee's] employment or related to this [Employment] Agreement shall be settled by arbitration in accordance with the rules of the National Futures Association.   The Arbitrator is authorized to resolve all federal and state statutory claims.   ...
>
> The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. ...   The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to, any claim that all or any part of the Agreement to arbitrate is void or voidable.   The arbitration shall be final and binding upon the parties.
>
> The parties understand that by entering this Agreement to arbitrate, they are agreeing to substitute one legitimate dispute resolution forum (arbitration) for another (judical [sic]), and thereby are waiving their right to have their disputes, except as set forth herein, resolved in court.

(Employment Agreement ¶ 16.)

## II. **DISCUSSION**

-3-

A.    THE FAA AND STRONG FEDERAL POLICY IN FAVOR OF ARBITRATION

The decision of whether or not the Court must compel arbitration is governed by the FAA.  See 9 U.S.C. § 2 ("A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").  "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, 'according to their terms.'"  Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 54 (1995)).  "[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements," Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112 (2001), and applies to agreements to arbitrate disputes arising out of employment in the securities industry, see, e.g., Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 647 N.E.2d 1298 (N.Y. 1995); Flanagan v. Prudential-Bache Secs., Inc., 495 N.E.2d 345 (N.Y. 1986).

-4-

Well-established federal public policy strongly favors arbitration as an alternative path toward the resolution of a dispute.   See Chelsea Square Textiles, 189 F.3d at 294 ("Through the FAA, Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution." (quotation marks omitted)); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) ("[The FAA is "a Congressional declaration of a liberal federal policy favoring arbitration agreements ...." (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)(quotation marks omitted))).   Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied."   Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (quotation marks omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible."   Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (quotation marks omitted).

However, as a general principle, no party may be required to submit to arbitration any dispute that it has not agreed to arbitrate.   See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198

(2d Cir. 1996) (quoting AT&T Techs., Inc. v. Commc'ns Workers
of Am., 475 U.S. 643, 648 (1986)); see also Bell v. Cendant
Corp., 293 F.3d 563, 566-67 (2d Cir. 2002).

B.   WHETHER THE COURT MUST COMPEL ARBITRATION

To determine whether to compel arbitration, the Court
must weigh three primary considerations:   (1) whether the
parties agreed to arbitrate; (2) whether the plaintiff's
claims fall within the scope of that agreement; and (3) if
federal statutory claims are at issue, whether Congress
intended those claims to be non-arbitrable.   See Genesco, 815
F.2d at 844.

1.   The Parties Agreed to Arbitrate

The Employment Agreement contains an express arbitration
provision.   The Arbitration Provision specifically provides
that any "action pertaining to [the account executive's]
employment or related to this Agreement shall be settled by
arbitration in accordance with the rules of the National
Futures Association."   (Employment Agreement ¶ 16.)   The
Arbitration Provision memorializes the parties' understanding
that "by entering this Agreement to arbitrate, [the parties]
are agreeing to substitute one legitimate dispute resolution
forum (arbitration) for another (judical [sic]), and thereby

-6-

are waiving their right to have their disputes ... resolved in court."     (Id. ¶ 16.)  Arrigo accepted his employment with the full knowledge of the arbitration provision, agreeing to its terms, in writing, at the outset of his employment. Accordingly, the Court finds that the parties agreed to arbitrate.

Arrigo, however, argues that the Court should deny Defendants' motion to compel arbitration because the provision setting forth the parties' alleged agreement to arbitrate is "unintelligible and cannot be construed as an agreement to arbitrate." (Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings, dated October 30, 2009 ("Pl. Opp. Br.") at 1.)  Arrigo adds that the text of the arbitration clause is "butchered and incomprehensible."  (Id. at 2.)  The Court is not persuaded that the Arbitration Provision is not in fact an unambiguous agreement to arbitrate.  Assuming for the sake of argument that a question of arbitrability exists here, the arbitrator, not the Court, should decide that question.   The parties agreed that "the Arbitrator, and not any federal, state, or local, court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation,

applicability, enforceability or formation of this Agreement, including, but not limited to, any claim that all or any part of the Agreement to arbitrate is void or voidable ...." (Employment Agreement ¶ 16.); see Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 451-52 (2003).

While Fisher is not a party to the Employment Agreement, it nevertheless protects him from the instant suit. "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." See Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993) (holding that individual chairs of the governing bodies of defendant's insurance syndicates were entitled to rely on arbitration provisions incorporated into their employers' agreements, notwithstanding that the chairs were not signatories to any agreement with the investors); Scher v. Bear Stearns & Co., 723 F. Supp. 211, 216-17 (S.D.N.Y. 1989) (finding that acts by employees of one of the parties to an agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the agreement); Brener v. Becker Paribas, Inc., 628 F. Supp. 442, 451 (S.D.N.Y. 1985) (same as Scher). Arrigo's claims against

-8-

Fisher are based on Fisher's status as an employee and agent of Blue Fish.  (<u>See</u> Compl. ¶ 9.)   Blue Fish, in turn, established that it is a party to the Employment Agreement, an agreement that contains an agreement to arbitrate.  As such, the arbitration agreement between Arrigo and Blue Fish protects Fisher, as long as Arrigo's claims fall within the scope of the Arbitration Agreement.

   2.  <u>Arrigo's Claims Fall Within the Scope of the Arbitration Agreement</u>

Arrigo asserts that the Arbitration Provision does not encompass his overtime claims.  Specifically, Arrigo contends that his claims do not fall under the purview of the Arbitration Agreement because they are statutory rather than common law or equitable.  The Court disagrees.

While the Arbitration Provision explicitly applies to "any common law or equitable basis of action pertaining to [the account executives'] employment or related to this [Employment] Agreement," it also states that the "[a]rbitrator is authorized to resolve all federal and state statutory claims."  (Employment Agreement ¶ 16.)  Arrigo's federal, state, and municipal claims, premised on his compensation in the course of his employment, fall squarely within the scope of the Arbitration Provision.  <u>See</u> <u>Genesco</u>, 815 F.2d at 846

-9-

("If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated ...." (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.13.)). Even if there were ambiguity as to the scope of the claims that fall within the Arbitration Provision, "the Supreme Court has instructed that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ....'" Chelsea Square Textiles, 189 F.3d at 294 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25). As such, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Collins & Aikman Prods. Co. v. Building Syst., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (quotation marks omitted); see also Thomas James Assocs. v. Jameson, 102 F.3d 60, 65 (2d Cir. 1996). Thus, the Court finds that Arrigo's claims fall within the scope of the Arbitration Provision.[3]

---

[3] Even if there were ambiguity as to this issue, per the parties' agreement, the arbitrator, and not the Court, should decide the scope of the Arbitration Agreement. (See Employment Agreement ¶16.); Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 451-52 (2003).

### 3. Congress Did Not Intend the Federal Statutory Claims at Issue to Be Non-arbitrable

"[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." 14 Penn Plaza, LLC v. Pyett, 129 S. Ct. 1456, 1465 (2009) (quotation marks omitted) (alteration omitted); see also Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72 (2d Cir. 1998) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)). "The burden of showing ... legislative intent [to preclude arbitration] lies with the party opposing arbitration." Oldroyd, 134 F.3d at 78 (citing Gilmer, 500 U.S. at 26); see also Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 227. Arrigo asserts one federal statutory claim, his FLSA cause of action. Arrigo does not offer any support for the proposition that Congress intended to preclude arbitration in FLSA cases. The Court therefore concludes that Congress did not intend FLSA claims to be non-arbitrable. See Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003) ("Congress has not evinced an intention to preclude arbitration of FLSA claims"); Steele

-11-

v. L.F. Rothschild & Co., 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (compelling arbitration of FLSA claims).[4]

Thus, the Court holds that it must compel arbitration because (1) Arrigo and Blue Fish agreed to arbitrate (and Blue Fish's agent Fisher is protected by that agreement); (2) Arrigo's claims fall within the scope of the Arbitration Provision; and (3) Congress did not intend for the FLSA cause of action at issue to be non-arbitrable.

## C.    DISMISSAL OF THE ACTION

The FAA directs the district court, "on application of one of the parties," to enter a stay in a case where the asserted claims are "referable to arbitration." 9 U.S.C. § 3; see also Shearson/American Express, 482 U.S. at 226; NPS Communc'ns, Inc. v. Continental Group, Inc., 760 F.2d 463, 465

---

[4] Arrigo further contends that the National Futures Association's ("NFA") rules that do not allow class actions render Arrigo and similarly-situated plaintiffs' claims non-arbitrable. Arrigo argues that with relatively small individual amounts in dispute in each individual case, the plaintiffs would effectively be barred from pursuing their claims by the NFA's rules. While the NFA does not allow "class actions," it does allow for comparable procedures for similarly-situated plaintiffs to consolidate their claims in one action. NFA Member Association Rule 5(m) expressly provides for the consolidation of claims that involve common questions of fact or arise from the same act or transaction. (See Fisher Oct. 15 Affidavit, Ex. 2.) Thus, the Court is not persuaded that the NFA would not provide an adequate forum for Arrigo and similarly-situated plaintiffs to pursue their compensation-related claims against Defendants.

(2d Cir. 1985). However, "[a]ll courts of which we are aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.'" Spencer-Franklin v. Citigroup/Citibank N.A., No. 06 Civ. 3475, 2007 WL 521295, at *4, 11 (S.D.N.Y. Feb. 21, 2007) (quoting Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006)) (collecting cases) (second alteration in original); see also Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008); Drakeford v. Washington Mut., No. 07 Civ. 3489, 2008 WL 2755838, at *4 (S.D.N.Y. July 11, 2008). Because the Court has determined that all of Arrigo's claims must be submitted to arbitration, the Court dismisses this action without prejudice.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 8) of defendants Blue Fish Commodities, Inc., and Andrew Fisher to compel arbitration is GRANTED; and it is further

**ORDERED** that the complaint is dismissed without prejudice.

-13-

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           3 February 2010

                                    VICTOR MARRERO
                                       U.S.D.J.